Shackeleord, J.,
delivered the opinion of the Court.*
On the 4th of April, 1859, Fisher & Bro., merchants in Woodbury, Cannon County, being indebted to insolvency, made and executed a trust deed to J. A. Barnes, as Trustee, to secure the payment of certain debts therein specified, conveying a stock of goods and other property. The deed was duly registered on the 5th day of April, 1859. On the 6th of April, 1859, T. J. *628 Miner, to whom W. H. Fisher was indebted, and who had commenced suit on his claim in the Circuit Court of said county, sued out an ancillary attachment, and had it levied on the goods conveyed by the trust deed. Fisher & Bro., their sureties, and T. J. Miner, entered into an agreement, by which the property conveyed in said trust deed should he placed in the hands of the Sheriff of said county, and, by him, he sold for the benefit: first, of T. J. Miner, and the other parties in the agreement named. Fisher & Bro., and the other parties to said agreement, believed that Fisher & Bro. had the right to revoke and annul said trust deed, as the beneficiaries therein had not accepted the provisions thereof.
In pursuance of said agreement, the Sheriff took possession of, and proceeded to sell, said property. On the 12th day of April, 1859, Furman & Co. filed their attachment bill in the Chancery Court of Woodbury, and attached the goods which had been so placed in possession of the Sheriff, they being creditors of Fisher & Bro.; and the goods, by order of the Chancellor, were placed in the hands of a receiver. On the 2d day of May, 1859, T. & W. Eakin, and on the 4th of January, 1860, Copeland, Armstead & Co., both of which firms were beneficiaries in said trust deed, exhibited their said hills, in said Chancery Court, alleging that said deed and the agreement, under which the Sheriff had been put in possession of said goods, were both fraudulent and void as to creditors. Fisher & Bro. answered the bill, and denied all fraud, and averred the debts were bona fide; and the object and purpose of *629 the trust deed was to secure the indorsers and other beneficiaries therein named. T. J. Miner, also, answered, and insisted that the agreement of the 6th of April was valid — the beneficiaries under said trust deed not having accepted its provisions; and that Barnes, the Trustee, not having given the bond required by law, said Eisher & Bro. had the right to revoke and annul said trust deed; and that he, (Miner,) having levied his attachment on said goods, was entitled to satisfaction of his claim out of said property.
By order of the Chancellor, the causes were consolidated and heard together.
The Court held, that the deed of the 4th day of April was revoked by the agreement of the 6th of April; and decreed an appropriation of the proceeds of said goods to the payment of the firm debts embraced in said agreement. T. J. Miner, being an individual creditor, was postponed until the firm debts, in said agreements named, were discharged; and the attaching, creditors were, in the order of their priority in attaching, to be paid out of the surplus. From this decree Miner and the attaching creditors have appealed to this Court.
We think the decree of the Chancellor is erroneous. Various questions have been presented for our consideration. First, the validity of the deed of trust of the 4th of April, is called in question. There is no proof in the record that it was fraudulent; on the contrary, the proof is ample that it was made in good faith, for the purpose of securing the debts therein mentioned. The rights of the parties to said deed having become *630 fixed and vested by the execution and registering of said deed, subject alone to the election of the beneficiaries therein, as to whether each would accept or reject its provisions, Eisher & Bro. had no power to revoke or annul the same.
It is a well settled principle, that the law, in the absence of proof to the contrary, will presume an acceptance, on the part of each of the beneficiaries, of all provisions made for their benefit; and such acceptance may, in fact, be given at any time after said convey anee is made, unless renounced or waived; and such acceptance, in fact, will relate back to the day of reg-stration: 3 Hum., 445.
In the case of Breedlove vs. Stump, 3 Yerger, 257, this question came before this Court, and it was held, that “in the absence of proof to the contrary, the Court would presume an acceptance on the part of the beneficiaries.”
The trust was created for the security of the debts, and whether the beneficiaries in the trust deed were apprised of the conveyance, or not, is not material. It was for their benefit, and when it came to their knowledge, they were entitled to accept or reject its provisions; and if they accepted, had a right to have the provisions enforced: 4 John. Ch. R., 418.
It is insisted, that, as Barnes, the Trustee, had not qualified according to the statutes in such cases made and provided, Eisher & Bro. had a right to revoke said deed.
This cannot avail the complainants. The assent of the Trustee is not necessary to the validity of a trust *631 deed. He may refuse to act, be unable to comply -with, the statutes, or die, and in such or similar cases, a Court of Chancery will execute it: 3 Hum., 446.
We are of opinion, that the agreement made on the 6th of April, 1859, by which these goods were put in possession of the Sheriff, was without authority, and conferred no rights.
The creditors embraced in the said trust deed, are entitled to the proceeds of the sold goods, according to the terms of said conveyance, except such as had repudiated or renounced the same. Such creditors named in said deed, as filed their bills attaching it, have thereby rejected its provisions, and are entitled to nothing, by virtue of said conveyance.
It is insisted, that Fisher & Bro. had no right to convey their firm property to secure a debt due by either individual of whom the firm was composed. Such is not the law.
In the case of R. M. House and others vs. Oliver, Thompson and others, (3 Head, 512,) this Court held, that “there is no lien or other equity in favor of firm creditors upon the partnership effects. They stand upon an equality with individual creditors. The partners themselves have a right to require the application of the partnership property to the payment of the firm debts, so that any lien or equity the creditors have, is to be worked through, and is dependent on, that of the partners.”
The decree of the Chancellor is reversed; the cause is remanded to the Chancery Court at Woodbury, where the fund will be collected and distributed among those *632 secured in the trust deed, in the order in which they are provided for, except those excluded by the principles settled in this opinion. All proper accounts will be taken in the Court below as to the fund and debts.

 This cause was decided at the December Term, 1865.